St. Louis Southwestern Railway Company v. F. A. Shiflet.

No. 936. Decided November 5, 1900.

**Negligence of Minor—Want of Discretion—Absence of Evidence.**

In an action to recover for the death of a boy between 11 and 12 years of age and of ordinary intelligence for his years, who was run over by a railway train while wrongfully on the track between stations, either walking along or lying asleep thereon, it was a question of fact, the burden of proof being on plaintiff, whether such negligent act of deceased was excused by his want of discretion; and testimony that he had not discretion to understand the danger that he might fall asleep if he sat down (he knowing the danger of being run over while on the track) or that he had not discretion to go alone to other counties or distant towns (which was not admissible) was not sufficient to raise the issue whether his negligence was so excused. (Pp. 136-141.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Henderson County.

Shiflet sued the railway company for causing the death of his son. He had judgment which was affirmed on appeal by defendant, who then obtained writ of error.

*Frost, Neblett & Blanding* (*S. H. West,* general attorney, of counsel), for plaintiff in error.—The Court of Appeals erred in holding that the deceased, Thomas Shiflet, by reason of his immaturity, want of discretion and intelligence, could not be charged with contributory negligence. Krenzer v. Railway, 5 Am. Neg. Rep., 137; Railway v. Porter, 73 Texas, 304; Railway v. Boozer, 2 Posey U. C., 452; Railway v. Chambers, 73 Texas, 296.

The Court of Appeals erred in holding that even if the deceased, Thomas Shiflet, was wrongfully on the track of plaintiff in error, still it owed him the duty of discovery and was bound to use ordinary care for that purpose. Under this specification we present two propositions: First. If the deceased was wrongfully on the road of plaintiff in error, then it owed him no duty of discovery; the only duty it owed him under such conditions was to use proper care to prevent injuring him after he was discovered. Second. There could be no duty imposed upon plaintiff in error to discover the deceased, Thomas Shiflet, because he was at a place on the railroad at such time and under such conditions that plaintiff in error had no reason to suspect his presence or believe he was there. Railway v. Pruitt, 5 Am. Neg. Rep., 29; Dobbins v. Railway, 91 Texas, 60; Railway v. Porter, 73 Texas, 304; Railway v. Breadow, 90 Texas, 27; Railway v. Richards, 59 Texas, 373; Railway v. Chambers, 73 Texas, 296.

The Court of Appeals erred in holding that there was no error in permitting defendant in error to testify that the deceased, Thomas Shiflet, did not have enough sense, discretion, or intelligence to go alone from the house of defendant in error in Henderson County to Kaufman, Greenville, or other distant points. Krenzer v. Railway, 5 Am. Neg. Rep., 137.

The Court of Appeals erred in holding that there was no error in permitting the defendant in error and W. T. Holliman to testify that they did not believe that the deceased, Thomas Shiflet, had sufficient intelligence to know and appreciate the fact that if he sat down on the railroad track at night he might go to sleep and be run over by a train, and that he did not have sufficient intelligence to reason to himself that it would be dangerous to fall asleep on the track. Krenzer v. Railway, 5 Am. Neg. Rep., 137; Railway v. Porter, 73 Texas, 304; Railway v. Chambers, 73 Texas, 296; Railway v. Richards, 59 Texas, 373.

The Court of Appeals erred in holding that there was no error in permitting Judge Wilkins, the attorney for the defendant in error, in his opening argument to make the following statements to the jury: First.

That the law required plaintiff in error to discover the deceased, Thomas Shiflet, on its track, and that it was no excuse for the operatives of the train to say that they did not see him.     Second.     That most of the witnesses for plaintiff in error were in its employ and held jobs under it, and that it was natural to suppose they would do all they could for plaintiff in error.     Railway v. Kutac, 72 Texas, 644; Dillingham v. Scales, 78 Texas, 205; Dillingham v. Wood, 27 S. W. Rep., 1074.

The Court of Appeals erred in holding that there was no error on the part of the trial court in refusing to give special charge number 4, requested by plaintiff in error, to the effect that, if the travel along the railroad at the particular place where the deceased, Thomas Shiflet, was killed was not such as to attract the attention of the general management of plaintiff in error, nor the operatives of its trains over the road, then under such circumstances the deceased, Thomas Shiflet, would not be a licensee on the track, and if he had sufficient intelligence to know the danger of contact with a train, then only the care due a trespasser would be required of plaintiff in error.     Ward v. Railway, 23 Law. Rep. Ann., 715; Bradley v. Railway, 80 Texas, 84; Railway v. Richards, 59 Texas, 373; Krenzer v. Railway, 5 Am. Neg. Rep., 139.

The Court of Appeals erred in overruling the seventh specification of error presented by plaintiff in error, that the trial court erred in refusing to give special charge number 1, to the effect that if Thomas Shiflet had sufficient intelligence to appreciate and know that in going upon and remaining on the railroad track he would be in a place of danger subject to injury by passing trains, then plaintiff in error could not recover, and to the further effect that if the deceased, Thomas Shiflet, possessed sufficient intelligence to know that trains passed along the track at intervals, and that he might be injured by them, then plaintiff in error could not recover.     Railway v. Porter, 73 Texas, 304; Railway v. Breadow, 90 Texas, 76; Krenzer v. Railway, 5 Am. Neg. Rep., 137.

The Court of Appeals erred in overruling plaintiff in error's eighth specification of error, that the trial court erred in refusing to give special charge number 2, to the effect that the jury was not authorized to assume that because Thomas Shiflet was killed by contact with one of the trains of plaintiff in error that this was negligence.     Railway v. Porter, 73 Texas, 304; Shiflet v. Railway, 44 S. W. Rep., 920.

The Court of Appeals erred in holding that if the deceased, Thomas Shiflet, did not have sufficient discretion to charge him with contributory negligence, then plaintiff in error owed him the duty of discovery, and the failure to use ordinary care to discover him on its track at the place of his injury would be negligence.

The Court of Appeals erred in holding that there was no error in the charge of the trial court, and that it did not authorize the jury to pile one presumption upon another presumption.     Railway v. Porter, 73 Texas, 304; Shiflet v. Railway, 44 S. W. Rep., 918; United States v. Ross, 92 U. S., 284; Crow v. Fiddler, 3 Texas Civ. App., 580; Railway v. Dean, 76 Texas, 73.

.The Court of Appeals erred in holding that it was not error for the trial court to refuse special charge number 5, requested by plaintiff in error, to the effect that the care required of appellant's (plaintiff in error) employes in charge of the train to discover Thomas Shiflet and avoid injuring him would be measured by the care and vigilance usually exercised by engineers and firemen acting with ordinary prudence, under the same or similar circumstances, and that if the engineer and fireman exercised such care, and did not discover the said Thomas Shiflet, then defendant in error could not recover.

The Court of Appeals erred in holding that it was not error in the trial court to refuse special charge number 10, requested by plaintiff in error, to the effect, that if the jury believed from the evidence that Thomas Shiflet possessed that degree of intelligence that would appreciate and recognize that a railroad track was used for the purpose of running engines and trains thereon, and that to come in contact with such engines and trains would result in injury to his person, or in his death, and that such engines or trains were liable to pass at any time and at such time as he had no control of or appointment of, and having such intelligence, entered upon said railroad track, and doing such act under such circumstances was guilty of contributory negligence, then defendant in error could not recover. Railroad v. Evans, 78 Texas, 369; Railway v. Breadow, 90 Texas, 26; Rozwadosfskie v. Railway, 1 Texas Civ. App., 487; Ward v. Railway, 23 Law. Rep. Ann., 715; Krenzer v. Railway, 5 Am. Neg. Rep., 137; Railway v. Chambers, 73 Texas, 296; Railway v. Richards, 59 Texas, 373.

The Court of Appeals erred in holding that there was no error on the part of the trial court in refusing special charge number 14, requested by plaintiff in error, to the effect that if the jury believed from the evidence that the employes in charge of plaintiff in error's train at the time and place where Thomas Shiflet and his companions were killed had no reason to suppose that any person would be at that place on the track, then they were not required to use the same degree of care as though they anticipated, or ought to have anticipated, some person on the track. Ward v. Railway, 23 Law. Rep. Ann., 715; Railway v. Pruitt, 5 Am. Neg. Rep., 29; Railway v. Richards, 59 Texas, 376; Bradley v. Railroad, 80 Texas, 84; Railway v. Boozer, 2 Posey U. C., 452.

*Richardson, Watkins & Miller*, for defendant in error.—It is the duty of the servants of a railroad company in operating its trains to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the part of the company, for which it is liable in damages, unless such liability is defeated by the contributory negligence of the person injured. The common and habitual use of a railway track by the public as a footpath imposes upon the employes of such railway the duty of keeping a proper lookout for persons so on said track at such place. When a child of immature years and judgment is killed on a railroad, the question of

contributory negligence is one for the jury. Railway v. Yeager, 43 S. W. Rep., 25; Shiflet v. Railway, 44 S. W. Rep., 918; Railway v. Watkins, 88 Texas, 20; Railway v. Sympkins, 54 Texas, 615; Artusy v. Railway, 73 Texas, 193; Washington v. Railway, 38 S. W. Rep., 764; Railway v. Vaughan, 5 Texas Civ. App., 200; Railway v. McDonald, 75 Texas, 45; Railway v. O'Donnell, 58 Texas, 42; Keyser v. Railway, 19 Am. and Eng. Ry. Cases, 91; Hyde v. Railway, 26 Pac. Rep., 979; Johnson v. Transfer Co., 86 Wis., 64; Cook v. Navigation Co., 76 Texas, 353; Railway v. Simpson, 60 Texas, 103; Evansich v. Railway, 57 Texas, 126; Railway v. Mother, 24 S. W. Rep., 79; Railway v. Fletcher, 26 S. W. Rep., 446; Railway v. Jazo, 25 S. W. Rep., 714; Railway v. Ormond, 64 Texas, 485; Railway v. Hewitt, 67 Texas, 474; Railway v. Booker, 70 Texas, 531; Artusy v. Railway, 73 Texas, 192.

The tender age of the child alone, independent of any other proof, would compel the court to submit the issue of the child's capacity, and would warrant the jury in arriving at their conclusion, independent of the fact that the child was shown to be totally ignorant of railway trains or its dangers. The fact that a child is under the legal age ·at which discretion is presumed; that he had been raised in the country disassociated with dangerous machinery; had never ridden upon a railway, and was totally ignorant of its operation and danger; could only spell in his single syllables and read a little bit in the first reader; had not intelligence enough to travel alone a day's journey, and could not take care of himself in any business transaction, is sufficient evidence to support a verdict of the jury that the child was not guilty of contributory negligence. Railway v. Tonahill, 54 S. W. Rep., 419; Penal Code, art. 34.

The naked fact of an accident may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that without negligence it would not have occurred. Railway v. Yeager, 43 S. W. Rep., 24.

The question of contributory negligence in a child or anyone else is not to be determined by what or how much they may know in moments of cool reflection, but upon what they might know, or remember, or do, or attempt, under the conditions and circumstances then surrounding them.

The question whether the child was guilty of contributory negligence is not in any sense determined by whether or not he was on the track by license or against orders, but is a question of the child's degree of discretion and intelligence, as applied to surrounding circumstances.

The necessity of keeping a special outlook on a track is not dependent on whether those who are constantly using same are trespassers or licensees, but is determined by the fact of whether it has remained in habitual use by pedestrians, and if so, it follows that the trainmen should take proper care not to injure them.

Where a railway track is shown to be habitually used for seventeen

years by pedestrians, the management of the road and its operatives are compelled by law to take notice of that fact.

The duty of the engineer to keep a proper lookout is not limited by his knowledge or belief that some one may be on the track, but it is his duty at all times to keep a reasonable outlook, and it is his duty to keep a more careful outlook where the continued travel on the track makes it probable that some one may be upon it, and the care to be used is not what railroads or engineers usually keep, but such as a person of ordinary prudence would use in like circumstances. Railway v. Hawes, 54 S. W. Rep., 325.

The court having charged directly and positively that if the child had proper discretion and intelligence he would be barred, and having further instructed the jury that unless the plaintiff prove affirmatively both the negligence of defendant's servant and also the want of intelligence and discretion of the deceased, they must find for defendant, has given a full and fair charge.

A charge of the court stating that the knowledge of certain facts, stating the facts, constitutes a sufficient degree of discretion and intelligence, is erroneous, since it becomes a charge on the weight of evidence.

Where a road is shown to be constantly and habitually traveled in the daytime, one is compelled in law to know that it may be used for a like purpose at night.

The question of contributory negligence being principally determined by the intelligence of the child, it is pertinent to inquire of his ability and knowledge of travel the distance of a day's journey, especially where it is shown that deceased was killed while attempting a trip of that distance.

Upon the question of the sufficiency of intelligence of the deceased, the inquiry should not be confined to his knowledge of the danger of the particular act, but to any matter which will tend to enlighten the jury as to the degree of information and discretion.

It is proper for one who knows a child and is experienced in the raising of children to give his opinion as to the ability of such child to keep his faculties and keep awake under given conditions.

The language complained of being nothing more than a temperate and respectful discussion of a point of law, even if taken disconnected from its true meaning, is nothing more than a mistake of law; the only ground for reversal being the use of violent, abusive, and intemperate language, or such as is out of the record and unsupported by facts.

The relationship of master and servant and the incentives arising therefrom has always been a proper subject for discussion by counsel to jury. Railway v. Rhodes, 52 S. W. Rep., 979; 29 Am. and Eng. Enc. of Law, p. 771.

BROWN, Associate Justice.—The plaintiff in error instituted this suit to recover damages for the death of his son, Thomas Shiflet, who, he alleged, was killed on the track of the railway company through the

negligence of its employes. The evidence tends to show that the accident occurred in the nighttime, in Henderson County, about two miles and a half from a little village known as Brownsboro, and upon the track of the railway company at a point where it was fenced. It is charged that the servants of the railway company negligently failed to keep a proper lookout and thereby failed to discover the deceased, who was upon its track, and, running over him, negligently caused his death. The village of Brownsboro consists of two stores and a drugstore and one or two other houses. Between the village and the place of the accident and for some distance beyond that there are a number of houses near the railroad track where the farming people of that country reside. Between the rails of the railroad dirt was thrown in until it was filled above the ties, the dirt being of a light color. Along the center and between the rails this dirt was packed down as if it had been traveled over by persons on foot, making a path over the dirt. It was proved by those who lived near by in the neighborhood that for a great many years it had been the habit of the people who lived near to the railroad, when they went to the village on foot, to walk to and from it along the railroad track, and that persons were seen almost every day traveling upon the railroad in this way. It was not shown that any objection had ever been made by the railroad company or any of its employes. No person had been seen to walk upon the track in the nighttime. From the place where the accident occurred, westward, the track was straight for 150 or 250 yards and the grade rose to the east, that is, towards the place of the accident. It was testified to that an engineer with a headlight burning could have seen a boy lying upon the track at the distance of 150 to 200 feet. The engineer and fireman testified that they did not see the boys and did not know that anyone was hurt until they arrived at Tyler and found upon the pilot blood, pieces of clothing, and human flesh. At the point indicated upon the defendant's track and between the rails was found a pool of blood where there had been such a quantity of it that it ran down the embankment for several feet, and a short distance from it another pool of blood of considerable quantity. The blood was spattered on the west side of the ties and the fragments of clothing, bones, and flesh were found at a distance of twenty or twenty-five feet from where the pool of blood was, but the remains were so mangled as to be not recognized except from the clothing. The train upon which the blood was discovered passed that point about 11 o'clock at night.

Plaintiff in error, F. A. Shiflet, lived about two miles and a half north from Brownsboro and about the same distance from the railroad track. On Sunday morning of the same day that the boy was killed at night, Thomas Shiflet, without permission of his father, left home to go down near to the railroad track to the house of a neighbor. He went to that house and there he was joined by two other boys and the three, at about 11 o'clock in the day, started to go back to Mr. Shiflet's. The next time they were seen was at a point about ten miles west of Browns-

boro on the railroad, at which point the three boys were together walking along the railroad track and going west about 3 o'clock in the afternoon. At the same point late in the afternoon just before night, the same boys returned, going eastward, walking along the defendant's track. They were never seen again living; their remains were found the next morning as above stated.

Upon the intelligence of the boy, Thomas Shiflet, the following testimony was given: The plaintiff in error testified in substance that the boy was just a common country boy of average intelligence, and it looked like he ought to have intelligence enough to know that if a railroad train passed over him it would kill him. He was large enough to work around the place some and had just commenced to do his first plowing. Had been to school some, could read a little but could not write. The boy had been to Brownsboro a few times, sometimes with the father and a time or two he went alone to sell eggs and butter for his mother, but he had never been on a train or close to one. Witness did not believe that the boy had discretion to appreciate the danger that he might go to sleep. Did not have discretion enough to go alone to Kaufman or Greenville.

W. P. Hollman testified that he knew the boy, Thomas Shiflet. Did not think that he had sufficient intelligence to appreciate the fact that if he sat down on the railroad he was liable to drop asleep and get run over. Don't think he had sufficient intelligence to stop and think over the fact and reason to himself that it would be dangerous for him to sit down for fear he might go to sleep. Witness had six boys of his own, and he could hardly keep them awake long enough to get them to bed. He based his opinion on his knowledge of boys generally, and said when a boy is tired and lies down he don't believe he will go to sleep, but he will.

J. S. Hollman had known the deceased since he was six months old. He had seen him in Brownsboro and the boy had seen a train. The witness had heard the boy talk about the train. He was a boy of average intelligence, was not weak-minded, and was able to work intelligently.

The petition presented the case upon the ground that the deceased was upon the defendant's railroad track at a point where the public had used the railroad as a footway for a long time and to such an extent as to notify the railroad company of the fact and to impose upon it the duty of exercising the care which would be required at a place where people might be expected to be upon the track. It was alleged that the servants operating the train by which the boy was killed were guilty of negligence in failing to keep a proper lookout and in failing to discover him upon the track of the railroad, and also that the deceased was of such immature age and so wanting in discretion as not to be responsible for the negligence, if any, of being upon the defendant's railroad. The defendant pleaded the contributory negligence of the deceased. The trial court did not submit to the jury whether the deceased was rightfully upon the track, but in the charge given, assumed that being upon

the track of the defendant's railroad at the time and place when and where he was killed was an act of negligence on his part and must defeat the right of recovery, unless the deceased was of such tender age and want of discretion that he did not know and appreciate the danger of his position.

Two theories of the manner in which the accident occurred are presented: (1) that the three boys were walking along the railroad track in the nighttime and were overtaken and run down by the train without any warning, the operatives upon the train failing to keep a proper lookout and failing to discover them; (2) that Thomas Shiflet and his companions, having walked upon the defendant's track for some distance, being weary, sat down to rest, fell asleep upon the track, and were run over by the defendant's train, the employes of the defendant being negligent in failing to discover the parties upon the track and failing to give any warning or use proper diligence to prevent the accident. The plaintiff below presented and insisted upon the evidence that raises the issue that the deceased was asleep upon the track at the time he was killed, which evidence was admitted over the objections of the defendant. The court seems to have adopted this view of the accident and to have cast the case upon that line.

We must treat the case as if the fact that the deceased was guilty of negligence in being upon the defendant's track had been found by the jury. In determining the question of the responsibility of deceased, we can consider only the testimony which supports the action of the court, and we must give to that evidence full weight, indulging every inference that a jury might properly draw from it, and if a jury could have properly concluded that Thomas Shiflet was of such immature age and so wanting in discretion and intelligence that he did not understand and appreciate the danger of being upon the track of the defendant's railroad at the time and place of the accident, the judgment must be affirmed; otherwise, it must be reversed.

The evidence showed that Thomas Shiflet was between 11 and 12 years old, most probably within two months of the latter age. This does not bring him within the age at which courts have held a child to be exempt, as a matter of law, from the charge of contributory negligence, neither does it place him at such age as the court will, as a matter of law, hold that he was responsible for his acts. It was a question of fact for the jury to be determined upon the evidence adduced before them. If there was no evidence upon the subject, the issue should not have been submitted, or, having been submitted, the jury ought to have found for the defendant, because it devolved upon the plaintiff to show that, for want of discretion, the negligent act of the deceased was not imputable to him. Railway v. Hoffman, 82 Ill. App., 464; Railway v. Eininger, 114 Ill., 82.

Considering the deceased as responsible for his acts, he was upon the railroad track whether walking or sitting upon it, in a state of negligence, and the question is, was he so wanting in knowledge of the dan-

ger of his position and so incapable of appreciating that danger as to excuse him for being in the position of danger? There is no evidence which tends to prove that Thomas Shiflet did not know the danger of being upon the railroad track, or that, knowing his danger, there was any reason why he should not have appreciated it as fully as any other person. He had frequently been to the little town of Brownsboro, seen the railroad trains, and had more than once been intrusted by his mother to go to the village alone on business. He had on this occasion, according to the evidence, walked upon the track for a distance of perhaps twenty miles or more. That he must have known the danger of being upon the track is evident from the plain fact that standing upon a railroad track where trains pass necessarily involves danger. To say that one knows the danger of being run over by a railroad train, if upon the track, and yet does not appreciate the danger of being and remaining upon the track is contradictory not only in its terms but in the very substance of the proposition. The knowledge of such a danger necessarily involves an appreciation of it.

Two of the witnesses swore that they did not believe that Thomas Shiflet was possessed of sufficient intelligence to understand that if he sat down upon the railroad track he might fall asleep. Giving full force to this evidence and every inference to be drawn from it, can it be said that the boy's failure to realize that he might fall asleep had anything to do with his going into danger or remaining there? We can not understand how a jury could infer from the fact that he did not appreciate the danger of going to sleep that therefore he did not appreciate the danger of his position, and it seems to us that the consciousness of danger in the place he occupied constitutes the negligence and establishes the responsibility for remaining in that position. If he had remained awake, either sitting or standing upon the track, and the accident had occurred to him, he could not have been excused, because he was negligent and was responsible under the facts for his acts. Being negligent and responsible while awake; his falling asleep did not palliate or lessen the degree of his negligence. Ecliff v. Railway, 64 Mich., 203. In the case cited, a boy 12 years old was riding upon the front of a locomotive and the court said: "The fact that a boy of that age is more reckless and not as cautious as a man in the face of such danger is not, of itself, enough to excuse him." The liability to go to sleep can not excuse the negligence of being in a place of danger.

This is not like the case of Railroad v. Sympkins, 54 Texas, 615, where a man, in attempting to cross a railroad track, fell down in a fit and was run over. In that case, the man was not conscious of the danger of his position and could not have prevented the accident. He was overtaken by the fit unexpectedly, and, so far as the evidence showed, while he was in the act of passing over the track.

The case is not analogous to the turntable cases, in which it has been held that a turntable offered to boyish inclination for sport an invitation to ride upon it, was the means of exciting his childish curiosity,

and leading him into danger.  Admitting that all boys are liable to fall asleep when they lie down, this does not excuse a boy who is conscious of his danger for lying down or sitting down in a place of danger and thereby, through his own act, subjecting himself to that infirmity.  The natural inclination to sleep did not induce him to go upon the track, but it enhanced the danger to himself.

It is claimed by the defendant in error that the evidence shows that the railroad track had been used at the point of the accident so constantly and for such a length of time as would excuse the deceased for being upon it at that time and place, and that the jury might have found that he was rightfully upon the track.  Conceding, for the sake of argument, that the evidence was sufficient for the court to have submitted that issue to the jury, it was not so conclusive as to authorize this court to assume that the jury could not properly have found to the contrary. If this court were to affirm the judgment upon that ground, it would be acting upon an issue not submitted to the jury and upon which they could not have passed, under the charge, and the judgment would be without support in the verdict.  Williams v. Conger, 49 Texas, 602.

We are of opinion that the court improperly admitted the evidence that Thomas Shiflet was not of sufficient intelligence and discretion to go alone to other counties and to distant towns, because the evidence tended in no respect to establish his incapacity to understand and appreciate the danger of his position.

There being no evidence to sustain the finding that Thomas Shiflet was without sufficient discretion and judgment to understand and appreciate the danger of his position, the District Court erred in submitting that issue to the jury, for which error the judgments of the District Court and Court of Civil Appeals are reversed and this cause is remanded.

*Reversed and remanded.*