DUDLEY & ORR v. HAWKINS. (No. 523.)*

(Court of Civil Appeals of Texas. El Paso. Feb. 17, 1916. Rehearing Denied March 9, 1916.)

1. APPEAL AND ERROR &#x229C;&#x2192;1001 — REVIEW — VERDICT.

If there is any evidence to support the verdict, it will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. &#x229C;&#x2192;1001.]

2. NEGLIGENCE &#x229C;&#x2192;39—LANDOWNERS—ATTRACTIVE NUISANCE.

A boy 14 years of age, with companions, went upon defendant's quarry, stole a large can of blasting powder, concealing himself at the time of the offense from the defendant's watchman. The powder was a long distance from a sand pile on the premises about which children were accustomed to play, and the boy had never before been in the locality where he discovered the powder. In lighting small handfuls on burning grass the whole of the powder was exploded,

and the boy was injured. *Held* that, while a landowner who leaves unguarded dangerous machinery attractive to children may be liable for injuries received by the children, though they were on the premises without permission, yet defendant was not liable, for it could not be foreseen that children would sneak upon its premises and purloin explosives; a watchman living on the premises, and the other employés working until 5 o'clock.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 55; Dec. Dig. ☞39.]

3. NEGLIGENCE ☞85—INFANTS—CONTRIBUTORY NEGLIGENCE.

In view of the fact that the boy was 14 years of age and appreciated the danger of explosions, jumping back when he ignited handfuls of powder, he must be held guilty of contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 121–128; Dec. Dig. ☞85.]

4. NEGLIGENCE ☞136—CONTRIBUTORY NEGLIGENCE—INFANTS—JURY QUESTION.

The question of discretion in children is for the jury; there being no fixed age limit at which they are presumed to have discretion.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ☞136.]

5. NEGLIGENCE ☞122—ACTIONS—PLEADING.

In an action for injuries received by a boy when he exploded powder which he had stolen from defendant's quarry, the petition averred that on account of his limited or backward intellect and want of experience in handling explosives he did not know or appreciate the danger, while defendant denied that the boy did not know or appreciate the danger of handling the powder, and charged that he was negligent. *Held*, that the petition averred his want of contributory negligence, and such averment was put in issue by defendant, so that the burden of proving freedom from contributory negligence was on the boy.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 221–223, 229–234; Dec. Dig. ☞122.]

6. NEGLIGENCE ☞136—ACTIONS—BURDEN OF PROOF.

Where the burden of proving want of contributory negligence was on a 14 year old boy suing for injuries received in exploding powder stolen from defendant's quarry, a peremptory charge should be given for defendant, where there is no proof of want of contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ☞136.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Roscoe Hawkins, by next friend, against Dudley & Orr. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

S. P. Weisiger and J. F. Woodson, both of El Paso, for appellants. Lea, McGrady & Thomason, of El Paso, for appellee.

## Opinion.

HARPER, C. J. Appellee, Roscoe Hawkins, a minor, by his father as next friend, brought this suit against appellants, Dudley & Orr, for $10,000 damages for personal injuries alleged to have been sustained as the result of an explosion of a quantity of blasting powder, under substantially the following allegations of fact: That defendants were operating a rock quarry near the resident district of Highland Park, an addition to the city of El Paso, and had been operating it long prior to the date of the injuries; that in the operation of said quarry defendants used large quantities of blasting powder, dynamite, etc., for blasting rock from its natural position for commercial uses; that Roscoe Hawkins was a few months less than 14 years of age; that he and one of his neighbor boys and companions about the same age were attracted to defendant's said quarry by said quantities of blasting powder, dynamite, etc., left exposed; that they went upon the premises, and there found a large can of blasting powder about 25 pounds, which they took, as an object of amusement and attraction to them, and carried it away, and left it temporarily in an arroyo a short distance from the quarry; upon another day they returned for it, emptied it from the can into a sack, filled their pockets, threw it upon the ground, and proceeded to amuse themselves by igniting it with matches and burning dead grass, etc.; while so doing the entire sack was ignited, and Roscoe was by the explosion seriously burned; that on account of his limited or backward intellect and want of experience in handling powder and fire near powder Roscoe did not know or appreciate the danger attendant upon playing therewith, etc.; that defendants were guilty of negligence in leaving said explosives upon their premises so exposed that it attracted plaintiff and other children to it, and by not locking same up, etc.; that defendants, in the operation of their quarry, would several times a day, and almost daily, set off blasts of dynamite, blasting powder, etc., which produced loud explosions, and in this way give notice to the inhabitants and their children that explosives were being used at said quarry; that the quarry was open and easy of access, not inclosed or guarded in any way, so that children were easily attracted thereto and its approach easy to them; that defendants and their agents knew that the children of the neighborhood were in the habit of visiting said quarry, and knew that it was an attractive place to children, but made no objection to their visits to the premises.

Defendants answered, specifically denying the allegations of the petition and specially pleaded:

"Replying to paragraph numbered 5 of said first amended original petition, defendants deny that on March 4, 1914, Roscoe Hawkins and one of his neighborhood boys and companions were attracted to said premises by quantities of dynamite, caps, and blasting powder left exposed to the public at said quarry or premises, and deny that they found a large can of blasting powder exposed on said premises, and say that, if they did go on said premises, on or about said date, they went there without the knowledge or consent of defendants, and were trespassers upon said premises, and, if they procured or carried away from said premises a can of powder, they did so without the knowledge or

consent of defendants and against their will, and such taking was an illegal and criminal act on the part of plaintiff and those acting with him in so taking and carrying away said powder. * * * And defendants further plead and say that the plaintiff, Roscoe Hawkins, was guilty of negligence, proximately causing or contributing to cause his said injuries, if any, for which defendants were in no wise responsible."

The case was tried before a jury, and verdict and judgment for $1,250 was rendered, from which this appeal is taken.

### Findings of Fact.

Defendants, Dudley & Orr, were operating a rock quarry upon the side of Mt. Franklin, joining, but outside the limits of, El Paso, about two to five blocks from street car line to Highland Park, a residential addition to said city. In its operations large quantities of high explosives, such as blasting powder, dynamite, etc., were used, and witnesses testify that they had at times seen dynamite, caps, and powder in open cans about the place where the blasting was done. A private road led up to the quarry from the street car line. The premises were not inclosed in any way. There was also evidence of a watchman being on the premises at times. The evidence shows that there was a sand pile upon the premises in which children frequently played.

Roscoe Hawkins described the incidents leading up to and the accident as follows:

The accident occurred on March 5, 1914. That he was 14 years old in May following. "I lived about 12 blocks from the quarry. I had been upon the premises four or five times before the accident playing in a sand pile with some other boys. This said pile was about two blocks below the quarry, but in sight of the quarry." That they could look up and see the blasting, and the men working at the quarry could "see us down there. I don't know whether they did or not. Nobody from the quarry ever objected to us playing in the sand pile, and nobody ever stated that they had. I lived within a few blocks from the quarry about 3 years prior to the time of the accident, and during this time they had been blasting there off and on, but I had never been up to see them blast, and had not been up to the place of blasting up until we went up to get the powder. We did not go up that day to see the blasting. Two days before the accident Maurice Sawyer told me that there was some powder up there, and asked me to go up there and get it. I had no intention of going there until he asked me to. If he had not asked me, I would not have gone at all. I knew nothing about there being powder there until he told me. I had never seen any powder there, because I had not been up there. I then arranged to meet him and met him and Harold about 3 o'clock in the afternoon. Young Harold and I went up to where the powder was. Harold is the youngest one. Maurice did not go. As we got up toward the quarry, I saw a man coming down the road. We sat down on a large rock and waited until he went on home. We waited until he got where he could not see us, because we did not want him to see us get the powder. Our purpose was to get it without letting any one know it, without the consent of any one. After he had gone we went up there where the powder was. We kept a partner around to see if any one came. We found two cans of powder. I knew what was in the cans, because I had seen some before, and what it was used for. I knew that it was put under large

pieces of rock and exploded and blow the rocks out. I had known this for some time. We found two cans of powder tied together with wire. I slipped one can out. We took it up the cañon and hid it in a gully so no one would find it. We did not want any one to know we took the powder was the reason we hid it. We then went home without opening the can. The can was sealed. We agreed that night that we would go next day and get it. We met next day and went up where the powder was. Do not know whether it was off Dudley & Orr's premises or not. We pried the can open and emptied it into a gunny sack. We exploded some of the powder a handful at a time by lighting dry grass, and throwing the powder on it. When we would throw the powder on we would jump back and see it explode. We were afraid it would burn us. We left the sack of powder where we could easily get at it with the top open, and while we were exploding the handfuls of powder by lighting the dry grass the whole sack exploded. The Sawyer boys and I took the powder to have fun with it. We had never handled any quantities of powder as much as this before. I think it was a 25-pound can. I did not know that it would go off so easy; did not know the damage it might do nor the injury it might inflict. We did not intend to explode the whole 25 pounds at once, because we wanted to have more fun, and I knew that exploding 25 pounds at a time might cause trouble. I knew that when large quantities of powder exploded it was dangerous."

Appellants urge that under this statement of fact the court should have instructed a verdict for defendants: (1) Because no duty is shown to be owing to said minor by the owners of the quarry; (2) because the evidence shows that appellee went upon the premises to commit a criminal act, to wit, theft, and that, as the proximate result of the commission of the criminal act, he was injured; (3) that the uncontradicted evidence shows that appellee went to appellants' premises without their knowledge or consent, carried the powder off their premises, exploded it himself; therefore his acts proximately caused and contributed to his injuries.

[1, 2] A person who places upon his premises and leaves unguarded dangerous machinery unusually attractive to children of immature years and they are thereby induced to go thereon cannot escape liability, even though the child was there without express permission. Railway Co. v. Morgan, 92 Tex. 98, 46 S. W. 28; Little v. James McCord Co., 151 S. W. 835.

This case is predicated upon the principles of law which are approved and applied in this state in what is termed the "turntable cases," and the cases cited supra contain a full discussion of the principle involved and its application to given facts. As applied to the pleadings and proof in this case, if the defendants, Dudley & Orr, placed or permitted dynamite, blasting powder, or sand pile to be on their premises, and such things were unusually attractive to children, and the plaintiff was thereby attracted or allured upon the premises, and by reason of the failure of defendants to use the care required of them by law to prevent injury by

safely guarding the explosives the plaintiff was injured, and without negligence upon his part contributing to such accident and injury, the defendants are liable, and this cause must be affirmed.

To put the proposition as it alone can be considered by this court, if there is any evidence to support the findings of the jury, all these questions having been submitted in the charge of the court to the jury, the judgment must be affirmed. There is evidence that the sand pile was upon the premises; that it was attractive to children and that many children frequently played upon it. The powder was there, and was left upon the premises unguarded, except as to the watchman, and it was in sealed cans of 25 pounds capacity, and two of said cans fastened together with wire. The only evidence that the powder, etc., was attractive to plaintiff is the fact that, when told of it being there and solicited to go after it, he acceded to the solicitation and assisted in removing it from the premises, and the further fact that they succeeded in apparently deriving some amusement in exploding small handfuls by burning dry grass and casting the powder upon it. It seems clear that he was not allured there by the powder, for he says that he had not been up to the place where the blasting was done, where he found the powder, before the time that he went up and got it, although he had lived in a few blocks of the place for three years, and had heard the blasting, if not all of this time, at least a part of it, and that he did not know the powder was there until told about it by the other boy, and the fact that he went up there at the suggestion of his playmate seems to have been more ·a case of being overpersuaded by the suggestion of a boyish prank than by the explosives themselves. Appellee suggests in this connection that he could be allured by hearing of the existence of the powder as well as by an actual sight if it. This might be good reasoning, but not evidence, for in this case he said he would not have gone but for the fact that his playmate asked him to go; besides, .he did not hear of it from the defendants. Furthermore, it clearly appears that the defendants were using that care to protect people from harm who came upon the premises required by the law, to wit, ordinary care. So far as the facts applicable are concerned, it is shown by plaintiff's own evidence—defendants introduced none—that they had provided for a watchman to live upon the premises. Their employés, except Sundays, worked there until approximately 5 o'clock. The powder causing the· injury, and we are not here concerned with any other, was in large sealed cans, two 25-pound cans, and tied together with wire. The premises were blocks away, from two to five, from any public highway, with no path or road leading to it used as a public way, and upon the mountain side. Under such circumstances it could not be said that even the watchman would contemplate that it was necessary to keep his eye upon the powder, at all times in the fear that some child might burn himself with it.

[3, 4] Again, by his acts in avoiding the employés of the defendants in his approach to the quarry, stationing a sentinel to give warning of the approach of any one who might appear to interfere with the taking, and other facts enumerated in the findings of fact, which tend to show that he knew that the act he was doing was wrong and criminal, taken together with the facts enumerated by him, in connection with the burning of the powder, such as that he would jump back when he threw small handfuls upon the burning grass, and that he knew that to explode the whole sack would cause trouble, with the further fact that he was virtually 14 years of age, establishes beyond cavil that he was possessed of sufficient discretion and judgment to be held guilty of contributory negligence.

The rule in this state is that the question of discretion in children is a question for the jury. Evansich v. Railway Co., 57 Tex. 126, 44 Am. Rep. 586. And there is no fixed age limit, as contended for by appellee, within which a child is sui juris, or at which it will be presumed that it has not judgment and discretion, but there must be evidence in all cases to require an issue to be submitted. There is no evidence in this record except the mere fact of age which in any wise indicates that the plaintiff did not fully realize the moral turpitude in the taking of the powder and equally realize the dangers attendant upon playing with the powder. Cook v. Houston Navigation Co., 76 Tex. 353, 13 S. W. 475, 18 Am. St. Rep. 52.

[5, 6] Plaintiff pleaded that "on account of his limited or backward intellect" and want of experience in handling powder and other explosives Roscoe did not know or appreciate the danger of handling powder and fire near the powder, and for that reason did not appreciate the danger, etc., the legal effect of which was to allege that Roscoe was exercising ordinary care for his own safety. Defendants denied that Roscoe did not know or appreciate the danger of handling the powder, etc., and charged negligence on the part of Roscoe, etc. The pleadings put in issue the question of contributory negligence. In St. Louis S. W. Ry. Co. v. Shiflet, 94 Tex. 131, 58 S. W. 945, Shiflet was a boy between 11 and 12 years old, and the Supreme Court held that:

"This does not bring him within the age at which courts have held a child to be exempt, as a matter of law, from the charge of contributory negligence; neither does it place him at such age as the court will, as a matter of law, hold that he was responsible for his acts. It was a question of fact for the jury, to be determined upon the evidence adduced before them. If there was no evidence upon the subject, the

issue should not have been submitted, or, having been submitted, the jury ought to have found for defendant, because it devolved upon the plaintiff to show that for want of discretion the negligent act of the deceased was not imputable to him."

The plaintiff in this case did not discharge the burden of proof, and the appellants did show conclusively that Roscoe did know and appreciate the danger, and there was no conflicting evidence. The court should have given appellants' peremptory charge.

There appears to be nothing in this record to support an affirmance of this case, except that a boy 2 months under 14 years of age was hurt seriously and permanently, for which a jury, out of sympathy, allowed him a small amount of money as damages, and the trial court confirmed the action of the jury by entering its decree. It seems that the suit should be the other way. The plaintiff should pay for the powder wrongfully taken and destroyed.

It appears that the case was thoroughly developed upon the trial. It therefore becomes our duty to render the judgment here which should have been rendered in the trial court.

Reversed and rendered.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes