## Donald W. Anderson by August W. Anderson, Appellee, v. Peter J. Karstens, Appellant.

### Gen. No. 25,018.

1. TRIAL, § 195*—*when instruction to find for party will be denied.* Where, at the close of the evidence, defendant moves for an instruction to the jury to find the issues for defendant, the motion should be denied if there is any evidence in the record from which the jury could reasonably return a verdict for plaintiff; otherwise it should be granted.

2. NEGLIGENCE, § 185*—*when evidence will warrant recovery.* In an action to recover for personal injuries, plaintiff may recover if the evidence is sufficient under any good count.

3. NEGLIGENCE, § 45*—*when doctrine of "attractive nuisance" does not apply.* The principle of the "attractive nuisance" making an owner or occupier liable where the injury results from some dangerous element, a part of or inseparably connected with the alluring thing or device, cannot be invoked to establish liability for injury to a child caused by the explosion of a can into which another child had dropped a lighted match where the explosion did not take place until after the contents of one can had been poured into the other and the match applied.

4. NEGLIGENCE, § 45*—*what is extent of doctrine of "attractive nuisance."* *Semble*, that the doctrine of "attractive nuisance" requires that the dangerous thing have a power of attraction so

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

strong as to amount to an implied invitation to the child to come upon the premises, thus excluding him from the status of a voluntary trespasser.

5. NEGLIGENCE, § 45*—*what is effect of gasoline or oil cans as attractive nuisances.* In the legal sense, gasoline and oil cans are not such attraction or allurement as would prove irresistible to child instincts and curiosity.

6. NEGLIGENCE, § 194*—*when attractiveness to children is question of fact.* While, ordinarily, the question whether any given thing or any situation created by the owner of premises will amount to an invitation to a child to come thereon is one of fact for the jury, the nature of the thing or of the situation created must be such that the jury can reasonably find that the child was so attracted.

7. NEGLIGENCE, § 45*—*when premises are not rendered attractive by leaving oil cans thereon.* The owner of vacant premises does not, by allowing oil and gasoline cans to remain thereon, invite the children of his neighborhood to trespass on the property, especially where there is nothing else on the premises of a nature to attract children.

8. NEGLIGENCE, § 49*—*when act of leaving oil and gasoline cans on premises is not proximate cause of injury.* Even though the owner of vacant property was negligent in permitting oil and gasoline cans to remain on his premises, it not appearing who placed them there, such negligence was not the proximate cause of the injury to plaintiff, a child of tender years, who was burned by the explosion of one of the cans which were carried into an adjoining alley by other children who emptied one of the cans into the others and then applied lighted matches, causing the explosion.

Appeal from the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed with finding of facts. Opinion filed May 28, 1920.

HARRY A. BIOSSAT and FRANK L. BOYD, for appellant.

HARRIS F. WILLIAMS, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The appellee, who is plaintiff below, sued defendant,

appellant, in an action on the case for personal injuries and recovered a judgment for $7,500 upon the verdict of a jury, from which this appeal is taken. As plaintiff was a minor the suit was brought by his father as next friend.

The declaration consisted of two counts, the first of which charged that defendant maintained an attractive nuisance by means of which plaintiff, a child of tender years, was injured. The second count alleged defendant used a certain vacant lot adjoining a public alley and unprotected for storing tools, machinery and explosive materials, which were easily in view of the alley; that while plaintiff was passing along this public alley, certain cans containing explosive fluids thus stored were set on fire by other children of tender years, who were playing with them, whereby plaintiff was injured, etc.

To this declaration defendant filed the general issue and certain special pleas denying that he used the premises for storage purposes as alleged, or that he permitted or allowed cans of oil, gasoline, lubricants or any explosive to remain on the premises.

The evidence showed that the defendant owned, possessed and controlled the lot in question. It was known as Nos. 2133 and 2135, Potwyne place, was in a thickly populated district in the City of Chicago where there were many children. The lot was and for 16 years had been used by defendant in his business as contractor. The defendant lived at 2130 Montrose avenue, and at the rear of this lot, used as a residence, was a garage. The entry to this garage was from the alley and just about opposite to the vacant lot on Potwyne place. This public alley extended in an easterly and westerly direction along the south end of the vacant lot. The vacant lot was not fenced next to the alley as were the other lots in the block. The lot, alley and garage were used integrally by defendant in and about his business as a cement contractor. There were

wagons on the lot and a concrete mixer which was operated by a gasoline motor attached to it, certain piles of lumber, a tool house and tool box standing near and some 20 feet from the open alley. The gasoline for the concrete mixer was sometimes obtained from the barn, sometimes brought from other places and defendant testified: "When we brought the mixer and gasoline engine home if it had gasoline in it, it stayed there on the lot with the gasoline in it with a box around it." A number of large and small cans were placed on the lot from time to time by defendant's employees. These cans retained some part of their usual contents, some lubricating oil and others gasoline.

Defendant owned and used two automobiles which were run by gasoline. These were usually backed out of the garage on Montrose avenue to and upon the Potwyne place lot for the purpose of getting into the alley and vice versa. It would not have been possible to have used the lot in the way it was used by defendant if it had been fenced on the alley side because there would not have been room to turn with the loads of material, etc., used in the business. There were also sand and gravel piles and piles of forms, etc., upon the lot. These things were all visible at all times from the alley which was open and unobstructed and used by the public generally and by children in the neighborhood.

The explosion which caused plaintiff's injury occurred in what was known as a five gallon "monogram can." This can had been placed on the lot near the tool shed with two other cans by an employee of the defendant. This employee stated that defendant had told him to put the cans in the alley but that he (the employee) did not want to put them there and he therefore put them in the lot. The defendant was familiar with the conditions on this lot as he used it, substantially, in the same manner for a number of years. He

also knew that there were many children in the neighborhood of tender years and that they were accustomed to play on the lot, but he had told them not to play there.

It was shown for the defendant (and the evidence is uncontradicted) that the defendant from time to time cleaned up this lot; that one of defendant's servants examined the lot prior to the accident on the morning of August 7th. There was at that time a lot of wall paper there, cans, stove pipes, shoes, oil cans, paint pots and paint brushes. He cleaned them up. The only movable things left on the lot were two oil cans. It also appeared that people generally, from time to time, threw stuff of all kinds on the lot, which was from time to time removed by defendant's servants. Further, that the two automobiles and the oil for them were kept in the garage; that the gasoline used by defendant was stored in a tank underneath the ground on the south side of the garage, and was pumped out inside the garage with a pump; that there was a lock on the outside of the gasoline tank, and that this lock was fastened. The two oil cans which were placed on the lot were put there for the purpose of having the ash man take them away; and the tool shed was always locked.

It was also proved by a witness familiar with the qualities of monogram oil that in the year 1916 it was used for lubricating purposes; that it would not be set on fire by a lighted match; that it would burn at a temperature of about 365 degrees Fahrenheit; that in order to make that oil explode it would be necessary to mix an explosive with it and that gasoline, as a liquid, would not explode, but its vapor would do so. The foregoing facts are, we think, practically uncontradicted.

On the day of the injury some of the children of the neighborhood went to play as usual upon this lot. Among them was Thomas Philbin, between 8 and 9

years of age; Rudolph Munson, 7 or 8 years of age; Nore Munson, 5 or 6 years of age and Teddy Lindholm, between 7 and 8 years of age, and the plaintiff, who was then 5½ years old. All of the children lived in the immediate vicinity. They found the large five-gallon can, which had been placed near the tool shed by defendant's employee, and some other cans, and began to play with them by dropping lighted matches into them. They carried two of the cans into the alley between the end of the lot and the garage. There they poured the contents of one of the cans into the large five-gallon can and continued to drop lighted matches into it. At first the cans only smoked but as more matches were thrown into each can, after the cans were taken into the alley and after the contents of another can had been poured into the larger one, an explosion occurred; the large monogram oil can was thrown into the air and came down in a flame just as the plaintiff approached and this flaming can fell at his feet and he was very severely injured.

It is not contended that the damages are excessive if the plaintiff, in fact, had a right to recover. The fatal match was thrown by Rudolph Munson, who was about 7 or 8 years of age, as before stated.

At the close of the evidence defendant made a motion that the court instruct the jury to find the issues for the defendant, and the refusal of this motion is the principal error assigned and argued. The rule of law to be applied is well settled. If there is any evidence in the record from which the jury could reasonably return a verdict for the plaintiff the motion should be denied, otherwise it should be granted. *Devine v. Delano*, 272 Ill. 166; *Brimie v. Belden Mfg. Co.*, 287 Ill. 11. And the plaintiff may recover if the evidence is sufficient under any good count. *Supolski v. Ferguson & Lance Foundry Co.*, 272 Ill. 82. We think it is apparent that if the judgment can be sustained it must be upon the theory that the defendant

maintained upon his premises an "attractive nuisance" whereby plaintiff, a child of tender years, was attracted to the premises and injured. The case was tried and is argued here on that theory.

The liability of an owner of premises to children of tender years, who come thereon without express invitation from the owner, has been the occasion of conflicting decisions both in England and America. It is the conclusion of an able writer in 11 Harvard Law Review, p. 349-373, reviewing the decisions:

"That the law ought not to impose upon the landowner even a qualified liability, so far as the condition of his premises is concerned, to children entering without permission, although attracted by his method of making beneficial use of his premises."

This conclusion is supported by decisions of some States which hold that no recovery can be had in these cases where the child is in fact a trespasser, but we think the weight of the authority is otherwise. Thompson Commentary on the Law of Negligence, vol. 1, secs. 1024-51. Our courts have taken a broad and liberal view of the landowner's social duties in this respect and the rule of law, as first announced in the so-called "turntable cases" (*Sioux City & Pac. R. Co. v. Stout,* 17 Wall. [U. S.] 657) has been generally followed in this State. The courts have, however, laid down certain definite conditions which it is held must exist in order to make the doctrine applicable. *St. Louis, V. & T. H. R. Co. v. Bell,* 81 Ill. 76. In *McDermott v. Burke,* 256 Ill. 401, and *Follett v. Illinois Cent. R. Co.,* 288 Ill. 506, these conditions are stated and summarized. In *Follet v. Illinois Cent. R. Co., supra,* the Supreme Court points out that the cases in which an owner or occupier will be held liable under this theory fall into two classes: "First, where the injury results from some dangerous element, a part of or inseparably connected with the alluring thing or device, as in the turntable cases, where children may

be killed or injured while playing with the thing on account of its dangerous nature. Second, where the attractive device or thing is so located or situated that in yielding to its allurement the child, without such intervention of another element as breaks the relation of cause and effect, is brought directly in contact with danger from some independent source which occasions the injury.''

If it is said that the facts of the instant case as above set forth bring it within the first class enumerated the reply is that this cannot be for the reason that the cans were in themselves entirely harmless. It was only after the contents of one can were poured into another, and lighted matches applied, the explosion occurred. It is clear in the legal sense the cans were not such attraction or allurement as would prove irresistible to childish instincts and curiosity. The theory of our law on this subject seems to be that the dangerous thing must have power of attraction so strong as to amount to an implied invitation to the child to come upon the premises, thus precluding him from the status of a voluntary trespasser. It is true that this is a fiction, but one invented, as many others, in the interest of substantial justice.

Ordinarily the question of whether any given thing or situation created by the owner would amount to an invitation to a child to come upon the premises is a question of fact for the jury, but the nature of the thing or situation created must be such that the jury can reasonably find that the child was so attracted. It has been held that turntables, or an artificial pond of water, or a push car, or a sand pile, or a bin of sand, may reasonably be found to constitute such attraction or allurement by the jury. The line is not an easy one to draw for there are few things, new or old, not attractive to children in the sense in which that word is commonly used.

We find no case where cans on a vacant lot have

been held to have this alluring quality, and we think no jury under circumstances presented here could reasonably find that the owner of vacant premises who allows cans of the kind described to remain thereon invites the children of his neighborhood to trespass on his property. Indeed, that would require a higher degree of care than most parents, on whom nature has cast the duty of guarding their children from dangers of this kind, in fact, exercise. Nor do we think our conclusion would be different if, as appellee contends, we should consider it our duty to consider the whole premises and the whole situation in determining whether the things thereon were, in fact, alluring. No one of the children who testified said that he was attracted to or went upon these premises because of his desire to see anything which was placed thereon. Under such circumstances to hold the owner liable would almost amount to imposing the liability of an insurer.

This defect in plaintiff's case is, we think, vital whether it is claimed that the facts bring it within either the first or second class of cases enumerated. If, however, we consider it as of the second class, there is from that standpoint an additional reason why the plaintiff cannot recover.

This case, as we view the evidence, discloses that there was the intervention of another and independent element which broke the relation of cause and effect and the supposed negligence of defendant was, therefore, not the proximate cause of plaintiff's injury. This intervening cause in this case was the act or acts of other lads who carried the cans from defendant's lot into the alley, poured the contents of one can into the other and then applied the lighted matches which directly brought about the explosion.

The contention of appellee that the acts of these children of tender years could not be a juridical cause as was held by a divided court in *Iamurri v. Saginaw City Gas Co.*, 148 Mich. 27, cannot, we think, be con-

sidered the law of this State in view of the decision of our Supreme Court in *Seymour v. Union Stock Yards & Transit Co.*, 224 Ill. 579, where plaintiff, a child, was attracted by piles of clay deposited by a defendant railway company along its tracks adjacent to a public street, but who, when the train approached, ceased to play with the clay and ran along the bank touching the cars as they passed until he slipped under them and was injured. Although, apparently, too young to be held guilty of contributory negligence, it was held that he could not recover, because his own acts, not the allurements of the clay pile, were the proximate cause of his injury.

In view of his tender years and the undoubtedly serious injuries which appellee sustained we have given to the evidence and law of this case the most careful consideration. On no theory under this evidence do we think the plaintiff can recover. The proof is undisputed that people of the neighborhood, generally, threw discarded articles of many kinds upon this lot. It is also undisputed that the can in which the explosion occurred and which had been put upon the lot by defendant's servant did not explode when the lighted matches were first applied to it. There is no proof as to who placed the other can upon the lot nor what the contents of it were. It is just as probable under the evidence that the other can was placed there by a stranger as it is that it was placed there by the defendant or his servant. The evidence is therefore entirely consistent with the view that defendant is guilty of no negligence causing the injuries. For the reasons stated there can be no recovery in this case.

The judgment will therefore be reversed with a finding of facts.

*Reversed with a finding of facts.*

Mr. Justices Barnes and Gridley concur.

Finding of facts.   We find as facts in this case that the appellant, Peter J. Karstens, was not guilty of any negligence proximately causing the injuries for which he was sued by appellee.