Elmer Haas, a Minor, by Albert Haas, His Father and Next Friend, Appellant, v. F. E. Herdman, Trading as F. E. Herdman and Company, Appellee.

Gen. No. 38,354.

Opinion filed February 19, 1936.

HECTOR A. BROUILLET, of Chicago, for appellant.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellee; BURT A. CROWE, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This cause came to this court on a petition for leave to appeal, which was heretofore granted. Issue was had by the filing of abstracts and briefs.

The declaration consisting of two counts alleged that on May 21, 1925, the defendant was engaged in paving a road and building bridges in Cook county, Illinois, on Route No. 18 (Willow Springs and Flavin Roads) Lyons and Palos Townships; that in doing said work the defendant used explosives and carelessly permitted said explosives to lie on the ground in and about the vicinity in which they were working; that the explosives had a bright metallic covering and were attractive and alluring to children, which was well known to the defendant or should have been known, by the use of ordinary care and that the said defendant failed and neglected to cover or store said explosives and thereby prevent children from playing with them; that

at the time of the accident plaintiff was a minor, 12 years of age, and was playing in said vicinity and that as a direct and proximate result, and in consequence of said attractive and tempting explosives being uncovered, unguarded and exposed to view, the plaintiff began playing with the same and while so playing and while in the exercise of such ordinary care as could reasonably be expected of a boy of his age, intelligence and experience, the same exploded in plaintiff's hand, causing the loss of two fingers and the thumb of his right hand.

Defendant filed a plea of the general issue and a special plea stating that he did not have in his possession, charge or control explosives as charged by the plaintiff, and that no agents or servants of his had any such explosives.

There was a trial before a jury and at the close of plaintiff's case, the defendant moved for a directed verdict, which was denied. Thereafter, at the close of all the evidence the plaintiff moved for a directed verdict, which motion was denied; thereupon the defendant moved for a directed verdict, which motion was allowed by the court and a directed verdict in favor of defendant was returned and a judgment was entered against the plaintiff on said verdict.

Defendant's theory as to why the judgment should be sustained is based on his contention that the plaintiff failed to prove that the defendant had any dangerous explosives in his possession, charge or control, or that the negligence on the part of the defendant was the proximate cause of the injury.

Plaintiff's claim is that there was sufficient evidence to submit the case to the jury.

James Rokus, a witness on behalf of the plaintiff, testified that he lived at Willow Springs and that in going to school he walked along a path known as Flavin Road and as he came to a pump he noticed an article

lying in the grass that had a shiny plug and two long wires and that he thought it was a loud speaker for a radio and that he took it with him and walked for about a mile and a half until he came near the home of Elmer.Haas, the plaintiff; that the plaintiff walked from his house and met Rokus and that he showed the plaintiff the article he had found; that they looked at it and thought it was a plug for a loud speaker; that plaintiff held it up and that Rokus hit it several times with a rock and it exploded, blowing them both off the bridge and hurting plaintiff's hand; that he had seen men working on this road and heard explosions, but had never seen them exploding anything; that at 95th street off of Willow Springs Road there was a box that contractors have on jobs, and it had on it the. name of F. E. Herdman.

Frank Ring, a witness on behalf of plaintiff, testified that he resided in Willow Springs; that about the time plaintiff was hurt he was on Archer avenue; that he saw a group of boy scouts carrying dynamite fuses, such as plaintiff's exhibit A; that he asked the boys if they knew what they were; that he told them what they were and they gave them to him and he threw them in the canal.

Albert Haas, the father of the plaintiff, testified that when he heard of the accident he went down to the culvert and found two wires (plaintiff's exhibit B) and plaintiff's thumb nail; that he went to the pump where the fuse was found and found a fuse with long wires attached to it, plaintiff's exhibit A.

Thomas Shaughnessy, another witness on behalf of plaintiff, testified that he resided in Willow Springs and was helping a man by the name of Shorty, blow stumps; that they used fuses similar to plaintiff's exhibit A; that they would bore a hole in the stump of a tree and place dynamite at the base of it and attach two long wires to the ends and that he had a battery

box; that when the signal was given he would push the lever down and that would blow out the stump; that he was working for Herdman, the defendant, and his foreman was a man by the name of Shepherd; that he worked only about a week; that they were blowing up stumps about where the pump was; that he went to work the latter part of May, 1925.

The plaintiff, Elmer Haas, testified that he was 12 years of age; that he lived in Willow Springs; that when Rokus showed him what he had found they decided to see what was inside of it; that he held it in his hand and that Rokus hit it with a rock; that it exploded, knocking him down and blowing off his thumb and the first two fingers of his right hand and also taking off part of the hand above the first two fingers; that he was taken to the Argo Hospital where he remained for about a week.

There was also offered in evidence on behalf of plaintiff a contract between the county of Cook and F. E. Herdman, for the pavement of the road known as Willow Springs Road at the place where this fuse was found.

The defendant gave in evidence exhibit A, being a contract between F. E. Herdman and the Kenwood Trucking and Teaming Company, to do certain excavating and grading work in the vicinity of Willow Springs and Flavin Roads, in Cook county.

Herdman, the defendant, testified that he was a general contractor; that he entered into a contract with the Cook county highway department on April 20, 1925, for the construction of a road known as Flavin road; that his first work was north of Archer avenue placing tile; that he did not do any work south of Archer avenue during the month of May as he could not until the grading was down; that the grading was done by the Kenwood Trucking and Teaming Company; that he did not have any tool boxes there with

his name on them; that in September he did have tool boxes there, but none with his name on them; that the blasting of trees on Flavin Road was done by the Kenwood Trucking and Teaming Company and a man by the name of Shepherd under the Kenwood Company; that he did not have anything to do with the method of grubbing out the trees; that it was not until the latter part of September that he knew that there was any dynamiting being done there; that in the month of May, 1925, all of his work had been north of Archer avenue; that there were no trees or posts there at all; that he was not acquainted with the employees of the Kenwood Trucking and Teaming Company outside of Shepherd; that he never purchased or never used nor had he ever seen any wires or metallic cylinders like plaintiff's exhibit 1, on the job; that Shepherd had a wagon camp just north of 95th street; that he never heard anything about this accident until after the completion of the job; that the only foreman he had on the job was Walter J. Siebert.

We have set forth the evidence on both sides at considerable length for the purpose of determining whether or not the trial court was justified in directing a verdict. The evidence here shows that a dangerous explosive was left in the vicinity of a schoolhouse, along the road where children were passing going to and from school and boy scouts frequented. From the description of the explosive, it was an attractive curiosity which would invite the attention of children; it was a highly dangerous explosive which, under the circumstances, required the highest degree of care to see that injury would not be caused by lack of diligence in this regard.

In the case of *Bunyan v. American Glycerin Co.*, 230 Ill. App. 351, school children at play found a partially emptied can of nitroglycerin left by the employees of the defendant near a roadside in the vicinity of a pub-

lic school building; they took it to school and showed it to the teacher; one of the boys struck the can with a wrench and an explosion followed which resulted in the death of the teacher and several children. This court in affirming the judgment against the defendant said:

"The owner of a commodity so inherently dangerous as nitroglycerin is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty. 22 R. C. L. 165. . . . 25 Corpus Juris 185.

"A person is generally held liable for any injury resulting from leaving explosives in a place accessible to children, or where they are wont to congregate, under circumstances which do not make them wilful trespassers. 22 R. C. L. 166, and cases cited. The act of a child in causing the explosion is generally held not to be such an intervening cause as will relieve the defendant from liability for a breach of his duty. 22 R. C. L. 167, and cases cited."

The evidence shows that Herdman had the contract for the entire work. The witness O'Shaughnessy stated that he was working for Herdman and that in May, 1925, they were blowing stumps by blasting with dynamite, using fuses similar to plaintiff's exhibit A. Plaintiff's exhibit C offered in evidence was a contract between county of Cook and Herdman for the paving and construction of Flavin and Willow Springs Roads which cover the road where the fuse was found.

The court in the *Bunyan* case, *supra*, continuing, said:

"In order to establish liability, the negligence alleged in keeping the explosive must be the proximate cause of the injury. But, since disastrous results from negligence in the care of high explosives may

reasonably be anticipated, courts will not look too narrowly for independent causes intervening between the injury and the original negligence in keeping. 25 Corpus Juris 186, and cases cited. It was proven, without objection, that following the accident another can was found near the schoolhouse and ten others within a few miles thereof. The can in question, the property of appellant, was found by the children at a place where it should not have been. If any of appellant's agents or servants, other than Townsend, left the can in the vicinity of the schoolhouse, it was an act of negligence for which appellant should be held responsible."

It is quite evident that the court was convinced that the letting of the contract by Herdman to the Kenwood Trucking and Teaming Company, excused him from all liability and responsibility.

In the case of *Van Auken v. Barr,* 270 Ill. App. 150, the court at page 153, in citing Vol. 39 Corpus Juris, p. 1331, said: " 'A very important exception to the general rule exempting the contractee from liability for injuries caused by the negligence of an independent contractor or his servants is that, where the work is dangerous of itself, or as often termed is "inherently" or "intrinsically" dangerous, unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do it.' "

The use of dynamite with fuses attached for the removal of tree stumps, as in the instant case, was inherently or intrinsically dangerous and required that the highest degree of care be used in order to avoid injury. Leaving such dangerous explosives so that they were accessible to children would not indicate such care was used.

We think the court improperly considered the evidence of the defendant in taking the case from the jury. If there is any testimony in the record in favor

of the plaintiff which, with all the legal inferences that may properly be drawn therefrom, tends to support the plaintiff's claim, then the court should not take the case from the jury.

As the Supreme Court said in the case of *Shannon v. Nightingale,* 321 Ill. 168:

"Therefore the court may not properly take the case from the jury and direct a finding for the defendant when there is some evidence tending to prove every essential allegation of the plaintiff's declaration, merely because, in the judgment of the court, the weight of the evidence in support of some material allegation is not sufficient to sustain a verdict for the plaintiff. If the evidence in support of plaintiff's allegations is sufficient to make a prima facie case, the court is not authorized to direct a verdict for the defendant because of evidence of contrary facts tending to an opposite conclusion. On the motion to direct a verdict only that evidence can be considered which is in favor of the party against whom the motion is directed, and that evidence must be considered in the light most favorable to that party, together with all legitimate inferences which may be drawn from it in his favor. In this case, there was the single issue presented by the plea of not guilty, and the question whether Pratt was the servant of the plaintiffs in error was vital to that issue. The defendant in error made a prima facie case. Contrary evidence was introduced by the plaintiffs in error, but that contrary evidence could not be considered on their motion to direct a verdict in their favor. If the condition of the evidence at the close of the plaintiff's case does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense. Evidence contradictory of the plaintiff's will not do it. (*Balsewicz v. Chicago, Bur-*

*lington & Quincy Railroad Co.,* 240 Ill. 238; *Casey v. Kelly-Atkinson Co.,* id. 416; *Pell v. Joliet, Plainfield and Aurora R. Co.,* 238 id. 510.)"

In this case the judge denied the motion of the defendant at the close of plaintiff's evidence for a directed verdict, but at the conclusion of all the evidence found the defendant not guilty. The evidence subsequently introduced by the defendant was in part contradictory to the evidence introduced by the plaintiff and evidently in the opinion of the trial judge was of sufficient weight to overcome the evidence of the plaintiff. In this the court erred. The case should have been submitted to a jury, under proper instructions, and permit the jury to determine the weight of the evidence from the facts.

For the reasons herein expressed, the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HALL, P. J., and HEBEL, J., concur.