**STEWART et al. v. UNITED STATES.**

No. 10131.

United States Court of Appeals
Seventh Circuit.

Jan. 10, 1951.

John S. Burchmore, Robert N. Burchmore and Nuel D. Belnap, all of Chicago, Ill., Walter, Burchmore & Belnap, Chicago, Ill., of counsel, for appellant.

Otto Kerner, Jr., John Peter Lulinski and Wm. Sylvester White, Jr., Asst. U. S. Atty., all of Chicago, Ill., for appellee.

On Petition for Rehearing.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an action for damages brought by Walter B. Stewart and his minor sons, Sinclair Stewart and Donald Stewart, by Walter B. Stewart, their next friend, against the United States of America, under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). The damages claimed resulted from injuries sustained by the boys from the explosion of a hand smoke grenade which theretofore had been a part of a stock of such grenades maintained by the Army at Fort Sheridan, located in the State of Illinois.

The material facts are shown by the pleadings, affidavits attached thereto, by answers to interrogatories and by stipulation. Upon such facts both the plaintiffs and the defendant moved for summary judgment, whereupon the court overruled plaintiffs' motion and allowed that of the defendant. Consequently, the complaint was dismissed at plaintiffs' cost. From this order of dismissal the appeal comes to this court. Our previous opinion in this matter, rendered September 5, 1950, is withdrawn, and all orders entered pursuant thereto are vacated and set aside.

In the early months of 1947, the government's agents and the United States Army maintained a stock of hand smoke grenades, Mark 15, on the Military reservation known as Fort Sheridan, Illinois. The grenades were packed in boxes plainly marked with the word, "Fireworks." They were stacked in the open, not within a magazine or building, but covered over the top with a tarpaulin which did not conceal the lettering on the sides of the boxes. These stacked boxes of grenades were located within the Fort's Magazine Area, which was enclosed by a six-foot woven wire fence with three strands of barbed wire at the top. Within the same area were located magazine structures provided for the storage of ammunition and explosives. The Magazine Area was well within the perimeter or outside fence of the military reservation and was not visible to persons standing outside of such fence. No guard was maintained at the Magazine Area; however, the reservation was divided into two sections, in each of which was assigned a roving patrol. A large sign was posted on the roadway leading to the Magazine Area, which read, "Danger Military Explosives, This Road Closed to Public Traffic." Another sign on the gate of the magazine enclosure read, "Keep Out. No Smoking No Matches No Lighters Permitted in This Area."

The military reservation was open to the public, with free access to persons of all ages. There were sentries posted at the several gates in the perimeter fence but members of the public were permitted to come and go in the reservation without escort. The Magazine Area was accessible to the people. The perimeter fence had a large opening where it was broken down at a point near the Magazine Area and no sentry was posted at this opening. Among members of the public who frequented the reservation were high school boys from the adjoining village of Lake Forest, including Robert Toogood, age 15, George Baldwin, age 17, and the latter's younger brother, Leslie. Sometime in the early part of 1947, these three boys entered the reservation through the unguarded opening in the perimeter fence along the north boundary where the Fort adjoins the Lake Forest city dump. They saw the boxes, noticed that they were marked "Fireworks," scaled the woven wire fence and removed four

boxes to their home. They shot off many of the grenades and left one case in a vacant lot next to the Baldwin residence in Lake Forest.

On September 10, 1948, Sinclair Stewart, age 8, and his six year old brother, Donald, were playing in the neighborhood near their home and came across the box of grenades in the lot next to the Baldwin house. They picked up one of the grenades, which exploded in Sinclair's hand. As a result his right hand was shattered and his legs burned so that he was permanently disabled. Donald also suffered numerous severe burns.

Plaintiffs' claim for recovery rests upon two grounds. The first is that the user of explosives acts at his own peril and is responsible for any injury resulting to innocent persons. Under this theory the user or possessor of such explosives becomes virtually an insurer and is liable even without negligence for any injury done. While there is some authority which tends to support this theory, in the view which we take of the case we find no occasion either to embrace or reject this theory of liability.

The second is that the government was negligent in the manner in which it stored the explosive grenades, thereby creating a situation which enabled their removal from the Magazine Area to a point where the Stewart boys were injured. In disclaiming liability, the government urges (1) that there was no negligence on the part of the government and its employees, and (2) even if there was negligence, that the injuries complained of were not the proximate result thereof but flowed from the wrongful act of the three high school boys in removing the grenades from the Magazine Area to the point where the injuries occurred, or more specifically, that the injuries complained of were the result of the wrongful act of third parties and that the government's negligence was not the proximate and efficient cause thereof.

In the beginning, we are confronted with the perplexing problem as to whether the law of Illinois with reference to negligence and proximate cause is to be given effect. Plaintiffs urge that it should be, including an Illinois statutory provision directed at the manner in which explosives shall be stored. The government insists that this statutory provision is of no effect, although it tacitly concedes that the law of Illinois as announced by its courts is controlling insofar as it relates to common law negligence and when such negligence is excused because of the intervening act of a third party.

Sec. 143 et seq., Chap. 93, Smith-Hurd Illinois Annotated Statutes, provides in detail the manner and means to be employed for the storage of explosives. Sec. 145, with exceptions not here material, provides "no person shall possess or store explosives unless such explosives are completely enclosed or encased in tight metal, wooden or fibre containers. * * * Every container shall be plainly marked with the name of the explosive contained therein." Sec. 146, with exceptions not here material, provides, "all explosives shall be stored, in magazines * * *." Sec. 147 provides "Magazines in which explosives shall be lawfully kept or stored shall be constructed of brick, concrete, iron or wood covered with iron, and shall have no openings except for ventilation and entrance." Sec 148 provides, "The doors of magazines shall be kept closed and locked at all times, except when opened for storage or removal of explosives by persons lawfully entitled to enter the same." Sec. 154 provides for fines and imprisonment for those who fail to comply with any provisions of the Act.

This Illinois statute was enacted in 1939, long subsequent to the cession by the State to the Federal Government of the Fort Sheridan territory. For this reason, defendant contends that it forms no part of the law of Fort Sheridan where the alleged negligent acts occurred; in other words, that the statute is without application.

It must be admitted, so we think, that the cases sustain this view, in the absence of legislation by Congress making the law of the State or locality applicable. In James Stewart & Co. v. Sadrakula, 309 U. S. 94, 99-101, 60 S.Ct. 431, 434, 84 L.Ed. 596, is a good discussion of the situation in the absence of such legislation, as well as the recognized desire on the part of Con-

gress to provide for a uniform standard of liability. After pointing out that "future statutes of the state are not a part of the body of laws in the ceded area", the court stated: "Congressional action is necessary to keep it current. Consequently as defects become apparent legislation is enacted covering certain phases. This occurred as to rights of action for accidental death by negligence or wrongful act." In support of this quote, the court cites Title 16 U.S.C.A. § 457, entitled "Action for death or personal injury within national park or other place under jurisdiction of United States; application of State laws". This section provides, under the circumstances therein enumerated: " * * * the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." The government contends that this provision is not applicable to the instant situation. Any doubt in this respect, however, need not be resolved, by reason of Sec. 1346, Title 28 U.S.C.A., commonly referred to as the Federal Tort Claims Act, enacted in 1948, the relevant portions of which provide that a United States District Court "shall have exclusive jurisdiction of civil actions on claims against the United States, * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employe of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." No question is raised but that those in charge of Fort Sheridan and in possession of the explosive grenades were "acting within the scope of his office or employment," and admittedly the Fort Sheridan area was within and a part of the State of Illinois even though it had been previously ceded to the government of the United States. The language of the Act plainly discloses a twofold purpose, (1) waiver by the government of the immunity which it had previously enjoyed, and (2) that its liability be determined "in accordance with the law of the place where the act or omission occurred."

In State of Maryland v. United States, 4 Cir., 165 F.2d 869, 871, 1 A.L.R.2d 213, the court, referring to this section, stated: "This language clearly means that the standards and tests of local law are to determine whether a negligent or wrongful act has been established which is actionable and the nature and extent of the recovery permitted on account thereof * * *." And again, on the same page, the court stated: "To have defined all of the tort rules under which liability could be established would have been an almost impossible undertaking; but standards of liability were necessary and Congress was compelled, as a practical matter, to adopt the principles and standards of local law in defining them."

In United States v. Campbell, 5 Cir., 172 F.2d 500, 503, the court stated: " * * * the known purpose of the Tort Claims Act, as shown by its antecedent history, and the record made in its passage, to make the United States liable to third persons for the acts of its employees under the same circumstances, and no other, as those under which private persons would be liable for the acts of their employees according to the law of the place where the injury occurred."

To similar effect is Cerri v. United States, D.C., 80 F.Supp. 831, 833, where it was stated: "The act gives the consent of the United States to be treated by the injured party as if it were a private individual, amenable to court action without claim of immunity, in all those cases, not exempted by the act, where the negligence of its agents, servants or employees has caused injury or damage to third parties."

It may be further observed that the Act, with certain exceptions which we regard as inapplicable here, makes no distinction as to places where the wrongful or negligent act is committed. In this respect, it is all-inclusive. It is immaterial whether the negligent or wrongful act is committed on a military reservation, at a veterans' hospital, a post office building or on the city street. In all instances, the United States is liable "if a private person would be liable * * * in accordance with the law of the place where the act or omission occurred." Thus,

this Act is a further recognition by Congress of the desirability of a uniform standard of liability. To hold that it is without application, as defendant would have us do, is to make a no man's land out of the Fort Sheridan area, with no legal system for the adjudication of private rights.

It is, therefore, our conclusion that the Illinois statute providing the manner and means to be employed in the storage of explosives is for the purpose of the instant litigation applicable to the defendant. That no effort was made to comply with this statute is evident. And it is settled in Illinois that failure to observe the requirements of the State statute or ordinance as to care is evidence of negligence. Ostergard v. Frisch, 333 Ill.App. 359, 77 N.E.2d 537; Pennington v. Rowley Bros. Co., 241 Ill.App. 58; Laflin & Rand Powder Co. v. Tearney, 131 Ill. 322, 23 N. E. 389, 7 L.R.A. 262. In the Laflin & Rand Powder Co. case, the court stated at page 328, 23 N.E. at page 391: "In keeping a powder magazine in the town without complying with the condition named in the ordinance, the defendant was guilty of malfeasance."

Moreover, irrespective of the Illinois statute, we are of the view that the government was negligent in the manner of its storage of the grenades both as a matter of fact and of law. Undoubtedly the rule in Illinois required a high degree of care and use of the utmost precaution in the handling and storage of the grenades. That they were an explosive calculated to do great harm is not open to question. The rule is aptly stated in Bunyan v. American Glycerin Co., 230 Ill.App. 351, at page 357 where the court stated: "The owner of a commodity so inherently dangerous as nitroglycerin is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty. 22 R.C.L. 165. One keeping or storing dangerous explosives must exercise reasonable care, which is such care as is commensurate with the apparent danger. Accordingly, it is said that the utmost caution and highest degree of care must be used in the care and custody of dangerous explosives. 25 Corpus Juris 185." See also Hertz v. Chicago, Indiana & Southern R. R. Co., 154 Ill.App. 80, 88; Decatur Cereal Mill Co. v. Boland, 95 Ill.App. 601.

The government in its claim of due care points out that there were two fences surrounding the Magazine Area wherein the grenades were stored, that is, the perimeter fence surrounding the reservation and another fence immediately surrounding the Magazine Area. The perimeter fence may be left out of consideration for the reason, as already noted, that the public, including the boys who removed the grenades, were freely admitted to the reservation. Also of little if any significance as a precautionary measure is the fact that a roving patrol or guard was maintained. There is nothing to show or indicate that he was assigned the duty of guarding or protecting these dangerous explosives; in fact, the record indicates to the contrary. The sole care exercised by the government as to these highly dangerous explosives in boxes stacked in the open, with the alluring label, "Fireworks," plainly visible thereon, was a six foot woven wire fence with three barbed wires on top. The record shows no further details relative to this fence, but if it is the kind of woven wire which we have in mind it would afford little if any obstacle to a person, especially a boy, desiring to enter the Magazine Area. Certainly only such protection as was afforded by this fence was far from commensurate with the known dangerous character of the instrumentalities stored within, and in our view it was an inexcusable failure to exercise the high degree of care which the law requires under such circumstances.

The government relies upon the rule that land owners have no duty to keep their premises in any particular condition to exclude trespassers and numerous Illinois cases are cited in support of such rule. We have examined these cases and find none applicable to the instant situation. As shown, the rule in Illinois requires the highest degree of care in the handling and storage of explosives, irrespective of where such storage may be, and such care is de-

creed both by statute and by the courts based on common law principles.

■ This brings us to what we think is the most serious impediment to plaintiffs' right to recover, that is, whether the government's negligence was the proximate and efficient cause of the injuries complained of. That the injuries were attributable in part to the wrongful activities of the boys who entered the Magazine Area and removed the grenades is not open to doubt, but the question is whether this wrongful conduct on their part is such as to rescue the government from its negligence. The Illinois courts have spent much effort in defining this so-called doctrine of proximate cause. In Merlo v. Public Service Co., 381 Ill. 300, page 317, 45 N.E.2d 665, page 675, it is stated: "The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence. (Seith v. Commonwealth Electric Co., 241 Ill. 252, 89 N.E. 425, 24 L.R.A., N.S., 978.) If the act of a third party is the immediate cause of the injury and is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the original wrong, the connection is broken and the first act or omission is not the proximate cause of the injury." And in Gilbert v. Goralnik, 238 Ill.App. 199, the court quoted from a previous Supreme Court opinion as follows 238 Ill.App. at page 203: " 'Whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequences must be deemed too remote to constitute the basis of the cause of action.' "

In Neering v. Illinois Central Railroad Co., 383 Ill. 366, 50 N.E.2d 497, the plaintiff was a woman who was criminally assaulted and raped on the station platform of the defendant railroad. It was held that the defendant was negligent in failing to provide a safe platform. In so holding the court stated 383 Ill. at page 377, 50 N.E.2d at page 502: "The question however, is, from the conditions which defendant permitted to exist around its station, could it reasonably anticipate that plaintiff might be assaulted and as a consequence observe reasonable precaution to prevent it. It is our judgment the conditions were such that defendant ought reasonably to have anticipated plaintiff might be assaulted and that there is some evidence that reasonable precaution was not taken for her protection." More than that, the court rejected the defense that the criminal act of the assailant was an intervening cause so that the negligence of the railroad was not the proximate cause of plaintiff's injury. In so doing the court cites and reviews many Illinois cases on the doctrine of proximate cause and summarizes the same as follows 383 Ill. at page 381, 50 N.E.2d at page 504: "The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, efficient and intervening cause so that the negligence is not actionable is subject to the qualification that if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of the injury and he may be held liable notwithstanding the intervening cause. The intervening act of a third person does not necessarily relieve the author of an earlier negligent or wrongful act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause."

A more striking case and perhaps more pertinent to the instant situation is that of Ostergard v. Frisch, 333 Ill.App. 359, 77 N.E.2d 537, which clearly establishes the principle in Illinois that the owner of a dangerous instrumentality is responsible for damages caused by that instrumentality when he fails to adhere to a statutory

standard of safekeeping, and that such liability is not affected by the intervening wrongful act of a third party. In that case the defendant had left his automobile parked with the key in the ignition, contrary to a statutory provision which required its removal when the car was left unattended. In the absence of the defendant, the car was stolen, and while driven by the thief collided with plaintiff's automobile. A judgment against the owner of the car was sustained. The court, after holding that the car owner was negligent in failing to comply with the statute, considered at length the question as to whether the owner was exculpated from liability by reason of the intervening act of the third party who stole the car. In deciding against the owner the court stated 333 Ill.App. at page 368, 77 N.E.2d at page 541: "* * * there is imposed upon the owner of the car a duty to reasonably foresee the consequence of his negligence, that being one of the tests of proximate cause. He should not be permitted to say that he could not reasonably foresee that by leaving the key in the ignition, one might tamper with or steal the car and become reckless in its operation, causing damage."

The Court of Appeals for the District of Columbia, in Ross v. Hartman, 78 U.S. App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370, reached the same result upon similar facts. There, the owner of a truck left it parked in an alley with the key in the switch, contrary to an ordinance. The truck was taken by an unknown person and negligently ran over the plaintiff. The court stated 139 F.2d at page 15: "If by creating the hazard which the ordinance was intended to avoid it brings about the harm which the ordinance was intended to prevent, it is a legal cause of the harm. This comes only to saying that in such circumstances the law has no reason to ignore and does not ignore the causal relation which obviously exists in fact." And the same court in Schaff v. R. W. Claxton, Inc., 79 U.S.App.D.C. 207, 144 F.2d 532, held that the leaving of an unlocked car on a vacant lot where the ordinance was without application presented a jury question as to the owner's negligence and whether such negligence was the proximate cause of an injury sustained while the car was being operated by an unauthorized third party.

Turning to the instant situation, could the government reasonably have foreseen or anticipated that boys might enter the Magazine Area and remove grenades? A negative answer to this question requires a disclaimer of all knowledge of the proclivities possessed by the ordinary boy for discovery, exploration and the satisfaction of a curiosity oftentimes easily aroused. What could be more alluring or fascinating to a boy or group of boys, whether of tender or more mature age, than a pile of boxes in plain sight, labeled "Fireworks"? Presented with a situation of such appealing nature they did what might reasonably be anticipated of normal boys—they climbed over the fence and carried away some of these dangerous instrumentalities. Such a result could have been readily foreseen by the exercise of reasonable diligence on the part of those in charge. The government argues that the three boys who took the grenades were trespassers at the time they entered the reservation. The record, however, does not support this contention. They were on the reservation, as they had been on previous occasions, and as other members of the public had been, with the implied and perhaps express consent of the government. True, when they scaled the fence and entered the Magazine Area they were trespassers, and by carrying away the grenades committed a theft, but the government cannot disclaim responsibility for such trespass because the boxes containing the grenades with their attractive labeling were in plain sight before and at the time the boys climbed the fence, and the character of the fence, as already noted, was such as to present little if any obstacle to the boys' activities. In our view, the principle applied by the court in Ostergard v. Frisch, supra, is not distinguishable from that which should be applied here. There, the owner of the car was negligent; here, it was the government. There, a trespasser drove the car away with the resultant injury and damages; here, the boys were

trespassers and carried away the grenades, which resulted in injuries and damage to the plaintiffs.

The government places much reliance upon the recent case of Schmidt v. United States, 10 Cir., 179 F.2d 724, which undoubtedly is similar in many of its aspects to the instant case. There, bazooka shells were carried home by an employee of a government contractor who found them while working on the range at Fort Riley. One of the shells exploded while his children were playing with it, killing three and injuring others. The court assumed that there was negligence on the part of the government but held by a divided court that such negligence was not the proximate cause of the injuries. In doing so, the court stated 179 F.2d at page 728: "From all the authorities, as well as from sound logic, it must be said that the Government could not reasonably anticipate that an adult, mature man of ordinary intelligence, who was on the reservation under a license for a specific purpose would commit a trespass and wilfully take with him to his home property which he had no right to take. Schmidt's unlawful act was therefore an independent, intervening act which alone was the proximate cause of the injury." There, the court reasoned that the government could not reasonably anticipate that an adult, mature man would remove and take to his home the explosives, but here we are dealing with boys, and under the circumstances we think the government could reasonably anticipate that they might do as they did. More than that, the court in the Schmidt case was interpreting and applying the rule of proximate cause as announced by the courts of the State of Kansas, while here we are dealing with the rule as announced by the courts of Illinois. As was said in Bunyan v. American Glycerin Co., 230 Ill.App. 351, 358: "But, since disastrous results from negligence in the care of high explosives may reasonably be anticipated, courts will not look too narrowly for independent causes intervening between the injury and the original negligence in keeping."

The government concludes its brief with the statement, "The law does not require one to guard against every possible occurrence but merely danger within the range of reasonable apprehension." We agree with this statement as a general principle but we do not agree that it is applicable to the instant situation. That the government negligently permitted a situation fraught with great danger is hardly open to doubt, and that the intervening act which it relies upon as an avenue of escape from its negligence might reasonably have been apprehended is also clear. Such being the case, its negligence contributed to the injuries complained of and must be regarded as the proximate cause.

■ We conclude that the court erred in allowing defendant's motion for summary judgment and dismissing the complaint. In view of what we have held, it is also evident that the court erred in denying plaintiffs' motion for summary judgment. The point is made that we are without jurisdiction to decide this latter issue for the reason that the denial of a motion for summary judgment is interlocutory and, therefore, not appealable. Undoubtedly that is true where the appeal is from such an order, but here there is no question but that the appeal is from a final judgment. Under such circumstances and in view of the fact that both sides moved for a summary judgment, which leaves undisputed any issue of fact, we think we may properly consider any issue of law presented by the record. It follows from what we have held that plaintiffs are entitled to a judgment, and all that remains is the assessment of plaintiffs' damages.

The petition for rehearing is denied, and the cause is reversed and remanded, with directions to proceed in accordance with the views herein expressed.

DUFFY, Circuit Judge (dissenting in part).

The district court had before it the motions for summary judgment made respectively by the plaintiffs and by the defendant. The court overruled the motion of plaintiffs and granted defendant's motion and entered judgment dismissing the complaint. As there are a number of issues

of material facts here involved, I agree that the judgment based upon the order granting defendant's motion for summary judgment should be reversed. The original majority opinion stated, "We conclude that the court should have allowed plaintiffs' motion for a summary judgment * * *." The direction to the district court in the majority opinion on rehearing is "to proceed in accordance with the views herein expressed."

I am uncertain what result is intended by the change in direction, since the majority opinion after rehearing is substantially the same as the earlier opinion, except that all reference to Title 16 U.S.C.A. § 457 is eliminated. I assume that the majority still believes that the plaintiffs are entitled to recover judgment as a matter of law, and that all that is left for the district court to do is to assess the amount of damages.

In my original dissenting opinion I pointed out that the district court's order denying plaintiffs' motion for summary judgment was merely an interlocutory order and was not appealable.

Assuming, however, that jurisdiction exists to review the order of the district court denying plaintiffs' motion for summary judgment, due to the fact that this court did have jurisdiction to pass on the judgment dismissing the complaint, I am of the opinion that the record fails to show that the plaintiffs are entitled to judgment as a matter of law. It is of course fundamental that when a case comes before us on appeal from summary judgment we have no right to rely upon evidence which is in dispute. In my judgment in determining that the United States Government was negligent, the majority is relying upon evidence which is disputed in this record. As an illustration, in the opinion of the majority it is stated, "The military reservation was open to the public, with free access to persons of all ages. * *, * The Magazine Area was accessible to the people. The perimeter fence had a large opening where it was broken down at a point near the Magazine Area * * *." While there is evidence to sustain the statements above quoted, yet the following picture of the situation can also properly be painted from evidence appearing in the record before us, and by taking judicial notice of the statutes of Illinois:

In 1887 the State of Illinois ceded jurisdiction to the United States of the land now occupied by Fort Sheridan. Thereafter the United States Government maintained thereon a military reservation for the use of the United States military forces and has kept on said reservation various kinds of military supplies, vehicles and equipment. It stored ammunition and other explosives on a portion thereof known as the Magazine Area. This part of the reservation was restricted to all persons except those who were given permission to go thereon by the Ordnance Officer. A large sign, 3 ft. by 4 ft., was posted on the roadway leading to the Magazine Area which read, "Danger—Military Explosives—This Road Closed to Public Traffic." Two other large signs in the Magazine Area were plainly marked, "Explosives—Restricted Area—All Unauthorized Persons Prohibited." In addition there were eight or ten other signs reading, "Danger—No Open Fires, Lighters, or Matches." There also was a "Keep Out" sign on the doorway of the gate to the Magazine Area. The entire reservation was surrounded by a wire fence 6 ft. high, with barbed wires on top, which was (in 1947) in good condition except when broken into. The Magazine Area in which the smoke grenades were stored was not visible to persons standing outside the outer fence. In the Magazine Area an enclosure had been created by a cyclone type wire fence 6 ft. high, with three strands of barbed wire extending an additional foot above the fence. The smoke grenades were stored within this enclosure, in accordance with Army direction, and were covered by tarpaulin. In the early part of 1947 three high school boys, Robert Toogood, Leslie Baldwin and George Baldwin, without permission by Army authorities, and at night, came over or through the perimeter fence of the reservation and, as thieves and trespassers, climbed over the fence in the Magazine Area which enclosed the boxes of smoke grenades. They car-

ried away four boxes of grenades and hid them in the dump in the woods north of Fort ·Sheridan. Later the boys exploded some of the grenades on the beach. One box was taken to the home of Robert Toogood. About one and a half years later the two Stewart boys discovered a box of grenades in a vacant lot next to the Baldwin residence in Lake Forest, and caused one of the grenades to explode, causing injuries to both boys.

It seems clear to me that if a jury, or under the Tort Claims Act the trial judge, believed from the evidence that the foregoing statements appearing in the record were true, it would follow the negligence on the part of the United States Government had not been established as a matter of law. Surely this is a case where there should be a trial on the merits. In the event of an appeal, we would then have before us findings on the disputed questions of fact, and we would then be in a position to judge whether reasonable care commensurate with the apparent danger had been used by the Army authorities at Fort Sheridan. in storing the smoke grenades.

Possibly the majority's definition of smoke grenades, "that they were an explosive calculated to do great harm," is correct but my impression has been that they are designed not to cause great harm, and that, in contrast to ordinary explosive grenades, which are designed to kill or injure people, smoke grenades are used for concealing the movement of troops or vehicles, or for other tactical operations under circumstances when it is desirable. that no injury be caused to persons in the vicinity where the bomb is exploded. Of course some explosive force is required to release the smoke, and some injury might thereby be inflicted, and they might be classified as capable of doing harm—just as sharp knives or bayonets might, if played with by boys. In any event, in order to ascertain what reasonable care of them should have been exercised, testimony should be offered and received on a trial on the merits as to the construction and use of smoke grenades.

The majority opinion acknowledges that the question of proximate cause is the most serious impediment of plaintiffs' right to recover. The rule in Illinois, as elsewhere, is that the question of proximate cause is usually one of fact to be decided by a jury. In my judgment the record before us does not justify this court in deciding as a matter of law that negligence on the part of the United States Government was the proximate cause of the injuries suffered by the Stewart boys. The majority opinion states, "They (the three high school boys) shot off many of the grenades and left one case in a vacant lot next to the Baldwin residence in Lake Forest." That statement is not supported by any evidence in the record. The affidavit of Toogood shows that he took one box to his home, but the record absolutely fails to reveal any evidence .that any of the four boxes of grenades stolen by the three boys was left in the vacant lot next to the Baldwin home where a box of grenades was found by the Stewart boys a year and a half later. Furthermore there had been at least one other theft of explosives from the Magazine in the early months of 1947 according to the affidavit of Sgt. Shaner.

Every doubt as to the existence of a genuine issue as to a material fact must be resolved against the plaintiffs on their motion for summary judgment. The government is entitled to the benefit of all favorable inferences which might be reasonably drawn from the evidence. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016, 1018. The statement by the majority, "That the injuries were attributable in part to the wrongful activities of the boys who entered the Magazine Area and removed the grenades is not open to doubt * * *" is, I submit, not justified by the record before us.

Great reliance is placed in the majority opinion on a decision by an intermediate Illinois appellate court, Ostergard v. Frisch, 333 Ill.App. 359, 77 N.E.2d 537, where an owner was held liable for leaving, contrary to statute, an automobile unlocked with the key in the ignition while such automobile was parked on a city

street. It can hardly be said that this decision establishes the controlling law which governs here. Illinois courts have insisted that a plaintiff prove that the negligence of a defendant was the proximate cause of his injuries even in cases involving explosives like nitroglycerin, Bunyan v. American Glycerin Co., 230 Ill.App. 351, and dynamite, Haas v. Herdman, 284 Ill.App. 103, 1 N.E.2d 568. The plaintiff in Matijevich v. Dolese & Shepard Co., 261 Ill.App. 498, was ten years of age and was injured by the explosion of dynamite caps which had been taken from defendant's quarry by plaintiff and a companion. After taking the caps home a match was applied to one of the caps and an explosion occurred. The court held that the plaintiff could not recover as a matter of law, citing Anderson v. Karstens, 218 Ill.App. 285. In the Anderson case the defendant was a contractor who left cans of gasoline upon his lot where sand was piled in which children were known to play. The plaintiff, about eight years old, and some other young children carried some of the cans to an alley. Some one or more of them poured the contents of one can into a larger one and dropped a lighted match into it. Plaintiff was burned in the explosion which followed. The court said: "This case, as we view the evidence, discloses that there was the intervention of another and independent element which broke the relation of cause and effect and the supposed negligence of the defendant was, therefore, not the proximate cause of plaintiff's injury. This intervening cause in this case was the act or acts of other lads who carried the cans from defendant's lot into the alley, poured the contents of one can into the other and then applied the lighted matches which directly brought about the explosion."

The majority emphasizes that the defendant moved for summary judgment as did the plaintiffs, and seems to argue that therefore our court is precluded from saying that there is a dispute as to material facts herein. Undoubtedly government counsel were convinced of the soundness of their position as a matter of law when moving for summary judgment. At that time they might have been willing to stipulate a statement of facts as contended for by the plaintiffs. Even so, the record before us clearly discloses that there are issues of material facts and we should not close our eyes to that which plainly appears. I think that we should examine the record to ascertain whether or not there are issues of material facts, regardless of concessions or stipulations made by government counsel,[1] and, finding that such exist, we should order a trial.

I agree that the judgment below should be reversed, but feel that the case should be remanded for a trial on the merits.

opinion held that the government was not bound by a concession made by government counsel on oral argument.

---

1. As indicated in the concurring opinion in United States v. Bowman Dairy Co., 7 Cir., 185 F.2d 159, which concurring